MORRISON & FOERSTER LLP
GALIA Z. AMRAM (SBN 250551)
gamram@mofo.com
ANDREW L. PERITO (SBN 269995)
aperito@mofo.com
425 Market Street
San Francisco, CA  94105
Telephone:    415-268-7000
Facsimile:    415-236-6300

ADITYA V. KAMDAR (SBN 324567)
akamdar@mofo.com
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, DC 20037
Telephone: 202-887-1500
Facsimile: 202-887-0763

Attorneys for Defendant
KAREN CASTRO-TORRES

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>         v.<br><br>EDUARDO ALFONSO VIERA-CHIRINOS, et at.<br><br>                              Defendant. | Case No. 3:19-CR-00367-CRB<br><br>**DEFENDANT KAREN CASTRO-TORRES' SENTENCING MEMORANDUM**<br><br>Date:    April 20, 2023<br>Time:    10:30 a.m.<br>Ctrm:    6, 17th Floor<br>Judge:   Honorable Charles R. Breyer<br><br>**REDACTED VERSION** |

# TABLE OF CONTENTS

Page

I.  INTRODUCTION .................................................................................................... 1

II.  FACTUAL BACKGROUND ................................................................................... 1

III.  A PROPORTIONATE SENTENCE UNDER THE GUIDELINES ......................... 3

    A.  The Guidelines ............................................................................................. 3

    B.  The Government Has Not Established That Ms. Castro-Torres Was a Manager or Supervisor ............................................................................................. 3

        1.  Ms. Castro-Torres Did Not Exercise Decision-Making Authority or Control Over Others ............................................................... 4

        2.  Ms. Castro-Torres' Role Was One of Facilitation, Not Organization ................... 6

        3.  The Remaining Factors Weigh in Favor of Ms. Castro-Torres ............................. 7

    C.  Adjusted Guidelines Sentencing Range ........................................................ 7

IV.  A SENTENCE SUFFICIENT BUT NOT GREATER THAN NECESSARY UNDER SECTION 3553(A) ................................................................................ 7

    █  ███████████████████████ ........................................ 9

    █  █████████████████████████████████████████ ................ 10

    C.  The New Calculation for Criminal History Score in the Preliminary Amended Guidelines Supports a Downward Variance for Ms. Castro-Torres ............................ 11

    D.  The Need To Avoid Unwarranted Sentencing Disparities Under Section 3553(a)(6) Further Supports a Downward Variance ......................................... 11

VI.  CONCLUSION ....................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States v. Carty,*
    520 F.3d 984 (9th Cir. 2008) ...........................................................................7, 8

*United States v. Doe,*
    778 F.3d 814 (9th Cir. 2015) ...............................................................................6

*United States v. Lopez,*
    998 F.3d 431 (9th Cir. 2021) ...............................................................................9

*United States v. Lynch,*
    903 F.3d 1061 (9th Cir. 2018) ....................................................................4, 6, 7

*United States v. Whitney,*
    673 F.3d 965 (9th Cir. 2012) ...............................................................................7

**Statutes**

18 U.S.C. § 3553 ..................................................................................................8

18 U.S.C. § 3553(a) ......................................................................................*passim*

████████████████ ...........................................................................9, 10

21 U.S.C. § 841(a)(1) ..........................................................................................2

21 U.S.C. § 841(b)(1)(B) ................................................................................2, 3

21 U.S.C. § 846 ..............................................................................................2, 3

██████████████████████████████ ...........................................8, 9, 10

U.S.S.G. Chapter 5, Part A ............................................................................7, 11

██████████████ ...........................................................................8, 10, 11

U.S.S.G. § 3B1.1 n.4 ........................................................................................4, 6

U.S.S.G §4A1.1(b) .............................................................................................11

U.S.S.G §4A1.1(d) .............................................................................................11

U.S.S.G §4A1.1(e) .........................................................................................8, 11

**Other Authorities**

Amendments to the Sentencing Guidelines (Preliminary), April 5, 2023, *available at* https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20230405_prelim-RF.pdf ................................................................................. 8

## I.   INTRODUCTION

Karen Castro-Torres was raised in Honduras under conditions of extreme poverty, often without running water or electricity, and reliant on others for food and clothing.  She is also a repeat victim of sexual violence in her home country and in her travel to the United States to escape the conditions she faced there.  Ms. Castro-Torres is now the mother of three children, two of them fathered by Eduardo Alfonso Viera-Chirinos ("Eduardo"), the leader of the charged drug trafficking organization in this case. As she has admitted and taken responsibility for, Ms. Castro-Torres became a member of that organization and worked with Eduardo and others who conspired to distribute drugs in the Bay Area.

The Court has sentenced nine other members of the organization. Presentence Investigation Report, ECF No. 476 ("PSR") ¶¶ 11-19.  This includes Jorge Enrique Torres-Viera ("Enrique"), who was sentenced to a term of 60 months, who the government identified as having "played an integral role in organization from overseeing the housing network to cooking and selling drugs." ECF 343 at 9; PSR ¶ 17.  In light of all the circumstances of Ms. Castro-Torres' personal history and the nature of her involvement in the organization, and consistent with the directive of 18 U.S.C. § 3553(a) to "impose a sentence sufficient, but not greater than necessary" to meet the goals of sentencing, including avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, the defense respectfully requests that the Court grant Ms. Castro-Torres a downward variance and sentence her to no more than 60-months imprisonment and additional supervision and restrictions recommended by Probation.

## II.   FACTUAL BACKGROUND

Karen Castro-Torres was born in Tegucigalpa, Honduras.  PSR ¶ 66.  In her youth, she lacked running water and electricity.  When she was very young, she had to rely on the single daily meal she was provided at school for sustenance.  *Id.* ¶ 68.  Ms. Castro-Torres lost her younger sister, Rosa Isela Castro Torres, in a tragic accident when the car their father was driving ran over and killed Rosa.  *Id.* ¶

66. And for a period, Ms. Castro-Torres was under the care of her unemployed grandmother because both of her parents had come to this country, and she had to rely upon her friends and their families for both food and clothing. *Id.* ¶¶ 67-68.

Ms. Castro-Torres herself is a repeat victim of sexual violence, both in her home country and during her travel to escape the conditions she faced there. ███████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████

On September 21, 2022, Ms. Castro-Torres pled guilty to one count of conspiracy to distribute heroin, methamphetamine, cocaine base, and cocaine, pursuant to 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B). Indictment, ECF No. 51; Plea, ECF No. 441. She committed this crime as part of what the government calls the Viera drug trafficking organization ("Viera DTO"), which was lead by Eduardo Alfonso Viera-Chirinos ("Eduardo"). PSR ¶ 24. Ms. Castro-Torres first met Eduardo in 2015 and was formerly involved in a romantic relationship with him. *Id.* ¶ 74. He is the father of two of her three young children ███████████████, age 7, and ███████████, age 4. *Id.* Ms. Castro-Torres is also the mother of an 11-year-old son, ████████████, from a prior relationship in Honduras.[1] *Id.*

The government alleges that Ms. Castro-Torres is one of several people in the Viera DTO involved with coordinating housing for street-level distributors. Complaint ¶ 153, ECF No. 1 ("Compl."). Specifically, based on information from the U.S. Attorney's Office and the Drug Enforcement Administration, the PSR identifies that in addition to Ms. Castro-Torres and Eduardo himself, PSR ¶¶ 41-42, "Eduardo's brother, Jorge Viera-Chirinos (Jorge), nephew Jorge Enrique Torres-Viera (Enrique), … and associate Cilder Ramon Gamez-Velasquez (Cilder) all helped manage the redistributor houses." *Id.* ¶ 24.

███████████████████████████████████████████

███████████████████████████████████████████

---

[1] All of Ms. Castro-Torres' children are now in Honduras. PSR ¶ 74.

1

2

3

4

5

6

7              . *See* PSR ¶ 74.

8   **III.**     **A PROPORTIONATE SENTENCE UNDER THE GUIDELINES**

9         **A.**     **The Guidelines**

10         The Guidelines analysis of the U.S. Probation Officer set forth in the PSR is for a total offense

11   level of 35, PSR ¶ 55, a criminal history score of 4 and associated criminal history category of III, *id.* ¶

12   61, and an associated Guidelines sentencing range of 210-262 months, *id.* ¶ 89, noting also a 5-year

13   mandatory minimum under 21 U.S.C. § 846 and 21 U.S.C. § 841(b)(1)(B).

14         Ms. Castro-Torres agrees with Probation in determining that Ms. Castro-Torres' base offense

15   level is <u>**32**</u>, based on the single count of conviction. *Id.* ¶ 47. Ms. Castro-Torres also agrees that by

16   pleading guilty and "clearly demonstrat[ing] acceptance of responsibility for the offense," *id.* ¶ 54,

17   including based on her statements in her presentencing interview, *id.* ¶ 45, she is entitled to receive a 2-

18   level reduction under the Guidelines for acceptance of responsibility, *id.* ¶ 54. However, that reduction is

19   offset by what she agrees is the applicable 2-level increase under the Guidelines for her absconding from

20   pretrial release. *Id.* ¶ 51.

21         However, as further explained below, Ms. Castro-Torres disagrees that there should be a further

22   upward adjustment to the offense level, calculated in the PSR as a 3-level increase in offense level for

23   "manager or supervisor" role. *Id.* ¶ 50.

24

25         **B.**     **The Government Has Not Established That Ms. Castro-Torres Was a Manager or Supervisor**

26         Ms. Castro-Torres was not an "organizer, leader, manager, or supervisor of others" under §

27   3B1.1. U.S. Sent'g Guidelines Manual § 3B1.1 (U.S. Sent'g Comm'n 2021). § 3B1.1 states that factors

28   in determining leadership include:

- Factor 1:  The exercise of decision-making authority;
- Factor 2:  The degree of control and authority exercised over others.
- Factor 3:  The nature of participation in the commission of the offense;
- Factor 4:  The degree of participation in planning or organizing the offense;
- Factor 5:  The recruitment of accomplices;
- Factor 6:  The claimed right to a larger share of the fruits of the crime; and
- Factor 7:  The nature and scope of the illegal activity.

U.S. Sent'g Guidelines Manual § 3B1.1 n.4 (U.S. Sent'g Comm'n 2021).  This is a "totality-of-the-circumstances inquiry," *United States v. Lynch*, 903 F.3d 1061, 1084 (9th Cir. 2018), and under the totality of the circumstances, the government has not demonstrated that Ms. Castro-Torres is an organizer, leader, manager, or supervisor of others.

### 1.   Ms. Castro-Torres Did Not Exercise Decision-Making Authority or Control Over Others

Factors 1 and 2 cut against a finding of leadership:  the government has not shown that Ms. Castro-Torres exercised decision-making authority, and she had little control and authority over others. Indeed, the government has submitted hundreds of pages of affidavits throughout the course of its investigation that make the case that *other* defendants—and not Ms. Castro-Torres—were leaders and decision-makers in the Viera DTO.

The Complaint, for one, notes that the Viera DTO was "headed by" Eduardo Viera-Chirinos. Compl. ¶ 16.





Ms. Castro-Torres did not move back to the Bay Area with Eduardo, and there is no information that she began serving in a leadership role while remaining in Seattle.

DEFENDANT KAREN CASTRO-TORRES' SENTENCING MEMORANDUM / CASE NO. 3:19-CR-00367-CRB

1 ████████████████████████████████ That role, unlike the explicitly described

2 roles of other members of the Viera DTO, is not one of a leader of organizer.

### 2.    Ms. Castro-Torres' Role Was One of Facilitation, Not Organization

Factors 3 and 4 cut against a finding of leadership or organization because the nature and degree of Ms. Castro-Torres' participation was relatively small.  The Ninth Circuit in *Lynch* held that the defendants' activities clearly made him a leader and organizer because he "planned the venture, hired employees, ran the finances, and generally served as the primary person in the enterprise."  *Lynch*, 903 F.3d at 1084.  By comparison, Ms. Castro-Torres' role was not nearly as substantial.

At most, her role was one of facilitation.  There is a "longstanding rule" in the Ninth Circuit that "evidence showing that a defendant merely facilitated a criminal activity is insufficient to show that the defendant had the aggravating role required under § 3B1.1(c), whether as an organizer, leader, manager, or supervisor."  *United States v. Doe*, 778 F.3d 814, 825 (9th Cir. 2015).  In *Doe*, the Ninth Circuit found that the defendant's coordination of the activities of multiple criminal and non-criminal participants was the "driving force" behind the drug transactions at issue.  *Id.* at 826.   Here, the government has alleged that Ms. Castro-Torres was involved in coordinating housing for the street-level drug distributors, but, as noted above, the government regularly concludes that her participation was limited to assisting other, more senior members.  In other words, Ms. Castro-Torres' involvement in redistributors' housing was not the "driving force" behind the drug conspiracy in this case.

Ms. Castro-Torres was not even the driving force behind the housing component of the Viera DTO.  The Complaint contains allegations that *several* defendants—Eduardo's brothers Jorge and Victor, nephew Enrique, and associate Cilder—*as well as* Ms. Castro-Torres were involved with housing street-level drug distributors.  Compl. ¶¶ 18, 70.  Although the government alleges that Ms. Castro-Torres used her name on the lease paperwork, Compl. ¶ 33, ████████████

24 ████████████████████████████████

25 ████████████████████████████████

26 ████████████████████████████████

27 ████████████████████████████████

28 ████████████████████████████████

1 ███████

2 Even if this Court were to find her actions important to the underlying conspiracy, "conduct

3 which may have been integral to the success of the criminal enterprise" and "conduct that reflects a high

4 degree of culpability" are "insufficient to support a leadership enhancement unless the defendant also

5 exercised the requisite control over others." *United States v. Whitney*, 673 F.3d 965, 975 (9th Cir. 2012).

6 In *Whitney*, the Ninth Circuit held that there was no factual basis to support a finding that the defendant

7 was a leader or organizer because nothing showed that he "exercise[d] any control over others." *Id.* at

8 976. Here, the government has put forth no information that Ms. Castro-Torres' participation involved

9 any exercise of control over others.

10 **3.    The Remaining Factors Weigh in Favor of Ms. Castro-Torres**

11 There is no evidence that Ms. Castro-Torres recruited any accomplices or had a claimed right to a

12 larger share of the fruits of the crime, and therefore Factors 5 and 6 weigh in her favor. And finally, even

13 if this Court were to find that the nature and scope of the illegal activity—Factor 7—were substantial, the

14 foregoing factors all weigh in Ms. Castro-Torres' favor and demonstrate that she is not a leader,

15 organizer, manager, or supervisor of others. *See Lynch*, 903 F.3d at 1084 (this is a totality-of-the-

16 circumstances inquiry).

17 **C.    Adjusted Guidelines Sentencing Range**

18 Were the Court to adopt Ms. Castro-Torres' objection to the 3-level increase in offense level for

19 "manager or supervisor" role, that would result in a total offense level of **32**. Based on the recommended

20 criminal history category of III, Ms. Castro-Torres' calculated Guidelines range according to the

21 sentencing table in U.S.S.G. Chapter 5, Part A, would be 151-188 months.

22
23 **IV.    A SENTENCE SUFFICIENT BUT NOT GREATER THAN NECESSARY UNDER SECTION 3553(A)**

24 The Court has wide discretion in setting Ms. Castro-Torres' sentence pursuant to 18 U.S.C. §

25 3553(a). The overarching principle is that the Court "shall impose a sentence sufficient, but not greater

26 than necessary" to meet the goals of sentencing. 18 U.S.C. § 3553(a); *United States v. Carty*, 520 F.3d

27 984, 991 (9th Cir. 2008). Taking account of the PSR's calculated Guidelines range of 210-262 months,

28 Probation has recommended a downward variance to 120 months—approximately **50%** of the midpoint

7

of the PSR's calculated Guidelines range—in light of a number of mitigating factors. *See* PSR,

Sentencing Recommendation at 3.  The mitigating factors considered by Probation in recommending this

50% variance from the Guidelines range calculated by Probation include her experience of poverty and

trauma, limited job skills, the likelihood that her criminal history is overrepresented, and the possibility

that she may have been influenced by her relationship with the head of the Viera DTO, who is the father

of two of her children and with whom she was in a relationship until after she was incarcerated on this

offense. *See id*.

      In addition to the reasons for a substantial downward variance set forth by Probation, further

variance is warranted under two provisions of the proposed amendments to the Guidelines. ***First***,

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

which would result in a total offense level of **30**. ***Second***, Ms. Castro-Torres would receive one less

criminal history point under the Preliminary Amended Guidelines' version of U.S.S.G §4A1.1(e),

resulting in a criminal history category of **II** rather than III.

      Finally, a downward variance is further supported under 18 U.S.C. § 3553(a)(6) in giving

consideration to the need to avoid unwarranted sentencing disparities, in light of the sentences to other

members of the Viera DTO who shared a role in housing street-level dealers, and who also held further

roles of authority in cooking and selling drugs.

      For these reasons and as further set forth below, a downward variance to sentence of no more

than 60 months imprisonment is the only sentence sufficient, but not greater than necessary, to comply

with 18 U.S.C. § 3553.  This would be followed by the recommended 4 years of supervised release and

other conditions recommended by Probation, though as noted in the PSR, Ms. Castro-Torres will likely

be deported upon her release. *See* PSR, Sentencing Recommendation at 3.





DEFENDANT KAREN CASTRO-TORRES' SENTENCING MEMORANDUM / CASE NO. 3:19-CR-00367-CRB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



---

[4] *See supra* n.3.

DEFENDANT KAREN CASTRO-TORRES' SENTENCING MEMORANDUM / CASE NO. 3:19-CR-00367-CRB

**C.     The New Calculation for Criminal History Score in the Preliminary Amended Guidelines Supports a Downward Variance for Ms. Castro-Torres**

In addition to incorporating further amendments implementing the First Step Act's broadened safety-valve eligibility, the proposed amended Guidelines also includes revisions to the calculation of criminal history score.  *See* Prelim. Am. Guidelines, Proposed Amendment: Criminal History at 1-2, 6. The Preliminary Amended Guidelines would reduce the scope of offenders who receive "status points" for commission of offenses while "while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." *See id.* at 6.  And they would further reduce the amount of such an increase in criminal history score from 2 points to only 1. *Id.* (replacing current U.S.S.G §4A1.1(d) with amened U.S.S.G §4A1.1(e)).  This proposed amendment reflects a finding by the Sentencing Commission that "status points add little to the overall predictive value associated with the criminal history score." *Id.* at 1-2.

The PSR calculates Ms. Castro-Torres as having a criminal history score of 4, giving her a criminal history category of III.  PSR ¶ 61.  The first 2 points, assigned under U.S.S.G §4A1.1(b) are based on her sole prior conviction, a 6-month state sentence arising from a 2016 arrest. *Id.* ¶ 58. The second two points, assigned under current U.S.S.G §4A1.1(d), are based on the fact that the current offense was committed while she remained on probationary supervision from that prior offense. *Id.* ¶ 60. Under the proposed amendment, U.S.S.G §4A1.1(d), which adds 2 status points, is replaced with amened U.S.S.G §4A1.1(e), which would add only 1 status point, such that Ms. Castro-Torres would have a criminal history score of **3** (rather than 4) and a corresponding criminal history category of **II** (rather than III).

 The combined effect of applying the reductions in offense level and criminal history score from the Preliminary Amended Guidelines would result in a Guidelines range of **108-136 months**, as calculated from the Sentencing Table in U.S.S.G. Chapter 5, Part A.

**D.     The Need To Avoid Unwarranted Sentencing Disparities Under Section 3553(a)(6) Further Supports a Downward Variance**

Among the required considerations of 18 U.S.C. § 3553(a), which directs imposition of "a sentence sufficient, but not greater than necessary" to meet the goals of sentencing, is the need to avoid

1  unwarranted sentencing disparities among defendants with similar records who have been found guilty of

2  similar conduct.  18 U.S.C. § 3553(a)(6).  The Court has already sentenced other members of the Viera

3  DTO that the government has identified as "help[ing] to manage the redistributor houses." PSR ¶ 24.

4  Cilder was sentenced to 48 months imprisonment, *id*. ¶ 18, and Enrique was sentenced to 60 months

5  imprisonment, *id*. ¶ 17.

6      The government has identified Enrique as occupying "a managerial position within the DTO."

7  ECF 343 at 7.  This included not only a "primary role" of "collecting rent from street-level dealers living

8  in the DTO's houses and finding places for dealers to live," *id*. at 7, but also selling drugs to and

9  negotiating drug pricing with other resellers, *id*. at 8, "cooking" drugs for the organization, *id*. at 8.  The

10  "wide scope" of Enrique's role even included "assisting in coordinating incoming shipments of drugs

11  from abroad and discussing how to smuggle large amounts of cash out of the country," *id*. at 8, such that

12  his "position in the DTO became so well-known and so expansive that street-level dealers wondered if he

13  was running the Bay Area operation," *id*. at 8-9.

14      The government further has identified Cilder as occupying a "'middle management' role akin to

15  Enrique," ECF 403 at 7, which included "play[ing] an integral role in organization from couriering drugs

16  daily to collecting rent and to cooking drugs," *id*. at 8.  Specifically, the government contended that

17  Cilder (1) "helped maintain the organization's housing system, which was used to supply street-level

18  dealers with drugs and to ensure that the dealers continued working for the organization in exchange for

19  the housing assistance," *id*. at 4, including "collect[ing] rent money from the street-level dealers and

20  help[ing] with administrative tasks related to renting additional apartments for the organization," *id*. at 5;

21  (2) "spoke with the organization's street-level dealers, asked what supplies of drugs the dealers needed,

22  and then delivered those drugs," *id*. at 4; and (3) helped "cook" the Viera DTO's drugs, *id*. at 5.  Cilder

23  additionally had two prior drug-sale-related convictions.  *Id*. at 4.

24      In order to avoid unwarranted sentencing disparities with other defendants that the government

25  has identified as playing management roles in the Viera DTO—not only with respect to dealer housing,

26  but also with respect to cooking and distribution of drugs by the DTO—the defense respectfully requests

27  that the Court consider the 50% variance recommended in the PSR, see PSR, Sentencing

28  Recommendation at 3, applied against the midpoint of the adjusted Guidelines range of 108-136 months

(midpoint: 122 months) that would govern under the Preliminary Amended Guidelines. This calculation results in a sentence of approximately 60 months.

## VI.   CONCLUSION

For all these reasons, Ms. Castro-Torres respectfully submits that a sentence of no more than 60 months of imprisonment and 4 years of supervised release, along with other conditions as recommended by Probation, is the only sentence that is sufficient but not greater than necessary to serve the goals of Section 3553(a).

Dated:  April 19, 2023                              MORRISON & FOERSTER LLP

By: _____*/s/ Galia Z. Amram*_____
                              GALIA Z. AMRAM
                              ANDREW L. PERITO

                              Attorneys for Defendant
                              Karen Castro-Torres

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 19, 2023 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

*/s/ Galia Z. Amram*
GALIA Z. AMRAM

DEFENDANT KAREN CASTRO-TORRES' SENTENCING MEMORANDUM / CASE NO. 3:19-CR-00367-CRB